Curia, per Johnston, Ch.
In determining this cause the court has attended, rather to the points made in the argument, than to the grounds of appeal; which were widely departed from, and much extended, in the remarks of counsel.
We- are satisfied that the Chancellor has given a fair construction to that part of the will, in which the testator gives to his wife “the use of his mansion house'and furniture and the usual family accommodations,” at Fairfield, “ during the continuance of the trust estate.” No reference was necessary to ascertain" that the 'testator intended that, when Mrs. Pinckney might choose to visit, or reside, at Fairfield, she should' be entitled, for herself,- her servants and horses, to the use of the supplies which she might find on the place. Not, as apprehended by counsel, that the executors should be under the necessity of purchasing for her special accommodation, articles not on hand at the time, or-not produced on the plantation ; but that she should have the right, as in the life-time of her husband, to enjoy whatever the plantation afforded, and was usually consumed by the family. No precise direction can be given by the. court. Nor can more be done than to lay down the general rule ; and, in case of contest about its application, to apply it according to the particular circumstances which may then exist. If a contest should arise, I apprehend that evidence may be received upon the point, whether the accommodations claimed are such as the family usually enjoyed. But the admissibility of such evidence need not be decided now: and the question is reserved.
The next point relates to the property covered by the two deeds .of 1803; and 1813. It has been argued that an inquiry should have been made, to ascertain how far the latter embraces property included in the former : because, it was Insisted, that so far as the property is common to both deeds, the latter must *240 operate as a satisfaction to the former, or the parties interested must elect between them.
There is no evidence of any intention on the part of the testator to satisfy the first deed by the execution of the last. There is no reference, whatever, in the last deed, nor, indeed, in the will, to the deed of 1803; nor any thing to show that that deed was in the mind of the testator, when he executed the two junior instruments. When we consider the nature of the first deed,— that so as the testator was concerned, it was an executed, and in no sense, an executory, contract; that it left in him no interest to convey, no duty to perform, nor obligation to fulfil: — we are at a loss to conceive how the last can be regarded as a satisfaction made on his part. Where a party, under obligation to pay money, or to convey property, and who has not already done it, makes a payment or conveyance, corresponding to his obligation; here is a case of satisfaction. But satisfaction can never arise,— as the very word imports, — where the duty is already fulfilled. Here the deed of 18.03 had already divested Mr. Pinckney of all legal interest in the property covered by it: and if he undertook to convey any portion of the same property in the deed of 1813, the latter conveyance is simply inoperative, and .the property remains where it was before.
Where the obligation is attempted to be got rid of, by fulfilling it upon different terms,, or out of different materials, than those which it demands, there may arise a case of election : and the party entitled to it may either insist upon a precise execution of the duty, or take the substitute. -The option is with him and not with the opposite party ; as it is in every case of unconditional satisfaction. If he elects the substitute, there follows a discharge, dr satisfaction of the precedent obligation: but this satisfaction is incident to, and consequent upon the election made.
But even if we assume that there is property common to both the deeds in this case, and take that as the ground of an election ; no election (as between the deeds) can be made at the present time, or between the present parties. In the events which have happened, as well as in any event that can now happen, the interests of Mrs. Pinckney are the same under both deeds. She cannot, therefore, be required to elect between them. It is only upon her death, that the interests provided for in the instruments, diverge. Under the one, all the issue of Mrs. Pinckney by any marriage she may contract, are to take: under the other *241 only her children by Mr. Pinckney. But if an election is to be made with reference to Mrs. Pinckney’s death, it must be made by the parties who shall then be interested in the property, and must depend upon the condition of the property at that time : and I apprehend that the trustees, who are responsible for the execution of the deeds, must be parties. But I do not imagine that a case for election will then be presented. The children cannot elect to the exclusion, or ¿o the prejudice, of the other issue then in esse: nor is it to be expected that the latter will concur in an election to take under the last deed, which does not seem to provide for them, instead of the first, which does.
There does, however, appear to be a necessity for an election in the case; but it does not arise as between the two deeds: but between the last deed (or perhaps between both the deeds,) on the one hand, and the will on the other. This election is to be made by Mrs. Pinckney, and will not extend beyond her personal interests. By that part of the will which follows the lists of the negroes belonging to Moreland and Fairfield, respectively, the testator by way of compensating for the loss which Moreland had sustained by the cholera, seems to add to the Moreland stock a number of slaves who, he says, may not be enumerated in the deed of 1813. But this is done upon condition that such of the original Moreland stock as may have been omitted in that list, and included in the Fairfield list, shall be regarded as passing with the Fairfield trust estate created by the will. If Mrs. Pinck-ney elects to take under the will, she must submit to this condition. But, as is said in the decree, she will not be required to make the election until the condition of the property shall be ascertained : and an enquiry may be made before the master as to what negroes are added to oi omitted in the Moreland list, as intimated by the testator.
The remaining questions relate t’o the provision made for the payment of debts.
It is insisted that an enquiry should have been made to ascertain the amount of the debts as compared with the fund provided for satisfying them and with the residue of the estate; without which, it is said, the real intention -of the testator cannot be discovered. The fund specially provided, it is argued, is to remain subject to that trust only during Captain Huger’s life, which was subject to. terminate at -any moment after the death of the *242 testator, and is still subject to terminate at any moment; and it is argued that a fund so precarious, could not have been intended by the testator to be substituted for, and in exoneration of the residuary, undisposed of property, which is the primary fund; especially if, upon enquiry, the debts should be found to be of such an amount as, in all probability, to require the residuary property to satisfy them.
But the evidence that would have arisen from such an enqui-ry, so far as it is competent evidence to disclose the intention of the testator, is already before the court. The fact was before the chancellor that there were debts to be paid ; that the testator had provided a special fund for satisfying them ; and that the rest of his estate consisted, partly of property specifically bequeathed ; partly of property covered by a general residuary clause of the will; and partly of property undisposed of. Now nothing could be added to these facts, by the enquiry demanded, but the amount of the debts and the comparative value of these different parts of the estate.
The question to be now discussed is not what is the proper fund for payment of debts under the true construction of this will; — to that I shall attend hereafter ; — but the present question is whether evidence of the particular circumstances of the estate is to be received to aid in, or to control, that construction : and we apprehend it would be repugnant both to principle and authority to receive, or use, it for such a purpose.
Mr. Roper, (Yol. 1. Ch. 12, § 3. pi. 3) lays it down “that the amount of the personal estate, in comparison with the debts, (fee. is not to be considered, in forming an opinion of the testator’s intention to exonerate it;” and he refers to four cases, which I have examined ; and they fully sustain his position.
In Inchiquin vs. French, (Amb. 40) Lord Hardwick said that Lord Holt had held, rightly, that the court ought not to consider the circumstances of the testator in determining what was his intention.
In Stephenson vs. Heathcote, (1 Eden, 39, 43) parol evidence to shew an intention of the testator to exempt the personalty, was rejected by Lord Nottingham. And in decreeing upon the merits of the case, his Lordship says “ The intention must be discovered from the words of the will itself, and not from extrinsic circumstances. The court must proceed upon known principles; not on loose conjectural circumstances, or by considering what a *243 man may be imagined to do, in the testator’s circumstances. We are not to enquire into the amount of the personal estate, to know whether it be or be not sufficient to pay debts,” (fee.
In Brummel vs. Prothero, (3 Ves. 111) Lord Alvanly said, “I will net look out of the will as to the state of the testator’s affairs. I shall not be guided by the consideration, whether he could or could not, under certain circumstances, have intended, what might, or might not, have been inferred from the same will, under other circumstances.”
In Bootle vs. Blundell, (1 Meriv. 193) Lord Eldon remarked, “with regard to circumstances dehors the will, which have been sometimes called in to assist in explaining it; (such as the respective amount of the real and personal estate; the greater or less degree of personal favor which the testator may be presumed to have intended towards this or that object of his bounty, and others of that nature,) I apprehend that they ought all to be set aside, in the consideration of a question depending on a will: such question being fit to be decided only by an examination of the whole will, taken together.”
In considering the remaining question, which is, whether the fund provided by the testator for payment of his debts, is to be regarded as the primary fund, the first observation is, that there are no creditors here, pressing their demands beyond the ability of this fund. No other fund has yet been broken into by creditors : nor are the executors here, shewing an exigency calling upon the court to set apart another fund in its place. Should creditors take hold of any other property, or, should the executors apply for leave to make use of other property; and shew a necessity for the application ; it will then become necessary to determine some of the questions argued here ; as, for instance, whether any compensation, and what compensation, should be made to the parties entitled to the property thus treated, and from what source the compensation should come. At present the only question is, which is the fund primarily liable.
It has been candidly conceded, in argument, that by the English rule personalty is liable before realty; and that in each of these classes respectively residuary or intestate property is liable before that which is specifically disposed of; and that where a specific property is charged with- debts, that shall not exonerate other property, otherwise liable in the first instance, unless the will contains an express exoneration or bears evidence of an in *244 tion to exonerate the latter. Evidence of this is found in the authorities quoted.
Mr. Roper says, (1 Rop. Ch. 12. § 3. pi. 11.) “ The rule is general, that, in the absence of contrary intention, the personal estate is the first and natural fund for the payment of debts and legacies, and the real estate is only to be resorted to in aid of the personal.”
Again: “ whether the real estate be devised to a person upon condition of his paying debts and legacies, or be charged with them generally, or whether it be given to trustees for those purposes, and the personal estate is disposed of by general residuary bequest; — none of these circumstances will prevent the personal fund being applied, in the first instance, to the satisfaction of these demands.”
He says, again, (Id. pi. 2.) when the question presented is, whether the realty is to be considered t'he primary fund for paying debts and legacies, it resolves itself in each particular case, into this : “does there appear from the whole testamentary disposition, taken together, an intention on the part of the testator, so expressed as to convince a judicial mind, that it was meant, not merely to charge the real estate-, but so to charge it as to exempt the personal ? for it is not by an intention to charge the real, but an intention to discharge the personal estate, that the question is to be decided.”
But we concur with the Chancellor that this is not the rule with us. It is admitted that the cases of Hall vs. Hall, and Warley vs. Warley, referred to by the Chancellor, did not necessarily require the decision which has been made in this case. But the question now before us was well considered in Warley vs. Warley, with a reference to the principal cases cited by Mr. Roper, and which have been again quoted by counsel: and upon mature reflection we are satisfied with the order of liability laid down in that case; and principally for the reasons so ably urged by the Chancellor who delivered that opinion.
We take it to be the rule with us that where particular property is pointed out, and especially where, as in this case, a particular fund is created, for the payment of debts and legacies: this is sufficient evidence of an intention that that shall be the primary fund or property to pay them. And we are satisfied that this rule in all cases accomplishes the prima facie intention of the testator, as well as the policy of our law. This must suffice, We might go further into this subject: but it must be ap *245 parent to all who witness and candidly consider the labors of this bench, that it is really impossible, in the time allowed us, to exhibit our opinions in a manner-corresponding to the importance, of the questions presented to us, or satisfactory to the profession, or even to ourselves.
It is- ordered that, with these explanations and modifications of the decree, the appeal be dismissed.
Johnson and Dunkin, CC. concurred.